UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ReMAPP INTERNATIONAL CORP.,   CASE NO. 07 C 0287
a New York corporation,

        Plaintiff,

vs.

COMFORT KEYBOARD COMPANY, INC.,
a Wisconsin corporation,

        Defendant.

## PLAINTIFF'S POST TRIAL MEMORANDUM

In accordance with the agreement of the parties and the Court following the trial of the above matter on May 15, 2008, plaintiff submits the following:

### SUMMARY OF THE CASE

ReMapp seeks to recover from the defendant the sum of $110,091.54 for specially manufactured goods it manufactured at the defendant's specific request prior to November 1, 2006. The defendant denies owing ReMapp any monies asserting as its primary defense that it never ordered the goods. It further asserts that plaintiff breached its contracts and a series of warranties when it allegedly delivered defective goods. Defendant asserts that as the result of ReMapp's breach it suffered damages.

## SYNOPSIS OF RELEVANT TESTIMONY
## AND ARGUMENT

**Harold Edmonds**, ReMapp International's president testified that ReMapp, a New York corporation provides contract manufacturing services for the fabrication of printed circuit boards and circuit board assemblies which are used in computers. These circuit boards and assemblies are specially manufactured for ReMapp's customers. Exhibits 10 through 14 are examples of the boards manufactured and fabricated by ReMapp. These boards are unique to the customer because of the customer's particular need. If the customer did not take delivery of the boards they would have to be scrapped since they could not be used by any other customer. If scrapped these boards would generate ten cents a pound. ReMapp started doing business with defendant in the year 2000 with continuous business starting in 2003. ReMapp provided specially manufactured custom printed circuit boards for incorporation into computer keyboards manufactured by the defendant. The boards provided to the defendant were manufactured to defendant's specifications and could not be used by any other entity as a component part. When ReMapp and the defendant first started doing business, defendant was required to pay fifty percent of the cost and the remaining fifty percent after the order was completed. Upon payment of the final fifty percent the boards would be delivered to the defendant.

After having received a series of orders from defendant in a two to three year period, payment terms were changed to provide for fifty percent net thirty which allowed defendant to pay fifty percent thirty days after receipt of the product. Plaintiff's Exhibit 1

establishes ReMapp's claim that it is owed $110,091.54 for a series of specially manufactured circuit boards verbally ordered directly by defendant's Charles Afifi. Plaintiff Exhibits 3 through 9, 15, 18, 19, 25, 26, 29, 31, 33, 34, 35, 36, 38, 41 and 45 as well as Defendant Exhibits 1002 through 1005 and1013 provide the documentary evidence substantiating the transaction which is the basis for the monies due and owing to ReMapp. At no time did Mr. Afifi or any other representative of the defendant despite numerous emails and demands for payment ever state that defendant had not ordered the boards or did not owe the monies claimed by ReMapp.  It was only after the product had been manufactured and defendant found a supposed new and cheaper supplier did Afifi and defendant assert that it had not ordered the boards.  Despite the numerous requests and demands by ReMapp the monies owed were never paid despite promises by the defendant to promptly pay. As to the defendant's allegations that plaintiff supplied it with defective products, no request for a RMA (Return Materials Authorization) was ever made by the defendant.  No request for returns or credits were made. No returns were in fact ever made.  ReMapp has paid $75,000-$80,000 for the raw materials used in the manufacture of defendant's boards.  As to Mr. Afifi's allegations that the entire transaction is a fraud and more specifically that the emails are forgeries are not true. At no time did he (Edmonds) or any representative send an email which was a fake, a fraud or a forgery

      **Charles Afifi,** defendant's principal testified that he did not place any of the orders which are the basis of ReMapp's claim; that Hal Edmonds testimony in that regard is a lie and any documents which establish a purchase were forgeries and fakes. His basis for the claims that the emails establishing the order are fakes and forgeries is that the

3

signature block is incorrect. As to the defendant's claim that ReMapp delivered defective product, Mr. Afif never requested any type of credit or a return authorization. He offered no explanation as to why defendant waited until ReMapp filed its suit to make a claim either for breach of contract and/or breach of warranty. In fact he never offered any evidence as to a specific warranty, a specific warranty that was breached, and what defendant's specific damages were. He failed to offer any evidence regarding damages other than some speculative allegations regarding the number of defective items delivered and what the cost might have been. Defendant's witness **Thao** while testifying that she did some repair work did not provide any specific evidence as to how many items she had to actually repair. She could not identify who manufactured the boards nor did she know who ReMapp was.

> The evidence presented is clear. Defendant ordered specially manufactured printed circuit boards from ReMapp which it has not paid for. Defendant's claim that the transaction or transactions which are the underlying basis for ReMapp's claim is or are the result of some type of fraud which is supported by a series of forged documents including emails is a desperate and incredible attempt to avoid its obligation. The claim that the boards were not ordered is not supported by the evidence. The assertion or implication by defendant and more specifically Mr. Affidi that this was a setup to collect monies from the defendant raises the serious questions: Why would ReMapp fake a transaction to collect the monies it claims it is owed? Why would it purchase $75,000-$80,000 of raw materials? The defendant offers no plausible answers. The evidence is just the opposite. The boards were ordered and manufactured. The assertion that ReMapp supplied it with defective products breaching some vague unstated warranties

4
Case 2:07-cv-00287-AEG   Filed 06/30/08   Page 4 of 6   Document 32

fails since defendant does not provide any substantial evidence to support its claims. It offers no testimony regarding what specific warranties were breached. It offers no evidence as to the warranties terms and what its damages it actually suffered. Even in its claim for breach of contract it cannot substantiate its claim other than through Mr. Afifi's unfounded assertions that a defective product was delivered. One has to question seriously those types of claims when they are made after efforts to collect an obligation are made.

It should be noted at this point that the defendant's claim of forged emails has no evidentiary support in light of it stipulating to their authenticity. During the course of the final pretrial after an inquiry by the court regarding the specific question regarding authenticity, defendant's counsel stipulated that there were no objections to the authenticity of any exhibits. This stipulation was memorialized in the final pretrial order. The Advisory Committee Notes to Rule 16, F.R.C.P. provides that the stipulations and agreements made at a final pretrial will control the trial. As part of the Rule 16 conference the issue of the presentation of evidence is to be considered with the court directed to explore "the possibility of obtaining admissions of fact and documents" so as to avoid unnecceasy items of proof and specifically stipulations regarding the authenticity of documents. See Cherney v Holmes, 185 F.2d 718 (CA 7th, 1950); Pritchett v Etheridge, 172 F.2d 822 (CA 5th, 1949). When this conference is held after the completion of discovery and just before trial, the attorneys for each of the parties have identified the evidence relating to their cases. It is, therefore, not unreasonable to hold them to the agreements and stipulations that have entered into. A party is bound by the stipulations, agreements or statements made at a pretrial for the purposes for the trial and

5

the courts have so held. See <u>Diaz v Schwerman Trucking Co</u>., 709 F.2d 1371 (CA 11th, 1983), <u>Laird v Air Carrier Engine</u> <u>Serv. Inc</u>. 263 F.2d 948 (CA 5th, 1959). The emails offered by both parties are per the stipulation of counsel authentic. Mr. Afifi's testimony regarding forgery of any emails by plaintiff must be stricken. Without that testimony defendant's deck of cards supporting this claim and the claim he didn't order the goods collapses.

Plaintiff should be granted judgment as demanded in its complaint and the counterclaims of the defendant dismissed with prejudice.

Dated: June 27, 2008.

>KOHNER, MANN & KAILAS, S.C.
>Attorneys for Plaintiff
>
>By: /s/ Jordan B. Reich
>     Jordan B. Reich

4650 North Port Washington Road
Milwaukee, WI 53212
(414) 962-5110